RUSSEL MARSTON, appellant,

*v.*

WILLIAM G. LENTZ et al., respondents.

[Decided March 3d, 1924.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who filed the following opinion:

"By consent of counsel these causes were consolidated, and were submitted on a stipulation of facts and certain exhibits consisting of maps and deeds.

"The controversy is over a restrictive building covenant, and Marston as complainant asks to have the defendants Lentz and Lenart enjoined from building more than one dwelling on a plot known as the DeGomme lot, on the south-

westerly corner of Charlton and Raymond avenues, in South Orange. In case Marston succeeds, then Lentz asks to have it determined that between him and Lenart he has the right to build on the one-third portion of the lot which is owned by him, and if he prevails Lenart will be unable to build on the remaining two-thirds of the lot.

"From the facts agreed upon it appears that one John G. Vose, between 1864 and 1866, acquired title to tracts of land aggregating two hundred and ten acres. Under date of January 1st, 1867, he had a map made, which was not filed, on which the lands are shown divided into plots of various sizes from about one to over seven acres. Between January 1st, 1867, and September 19th, 1868, Vose conveyed in the vicinity of the premises in question plots and parts of plots shown on this map, and he restricted some of the plots so conveyed to one house, and others to two, three and four houses respectively.

"On September 19th, 1868, Vose conveyed to DeGomme the lot in question, which is the easterly portion of plot S, as shown on the 1867 map, having a frontage of one hundred and forty-five and two-tenths feet on Raymond avenue and a depth of three hundred feet. This deed recited that the premises conveyed were a part of 'the estate called Montrose,' and it contained a restrictive covenant specifying in great detail the kind and character of the buildings that could not be erected, and the lines of business that could not be conducted thereon, the pertinent part of this covenant being:

"That the said premises * * * shall not at any time hereafter be used or occupied * * * for the erection of any buildings of any kind or description, excepting one dwelling-house with appropriate gardeners' cottages, &c., * * * appropriate for a gentleman's country residence; * * * the covenant aforesaid shall be attached to the said premises and run with the land and shall be inserted in any and all further conveyances," &c.

"In November, 1869, a new map of the property, entitled 'Map of Montrose showing lands of John G. Vose, &c.,' was filed. This showed the names of the owners of plots sold

since January, 1867, and it differed from the map of 1867 by 'showing at the northeasterly corner of the tract at a point over two thousand feet from the DeGomme lot, a 'new street and changes in the subdivision of the plots; it also showed a new street at the northwesterly corner of the tract over one thousand five hundred feet from the DeGomme lot and three plots on the map of 1867 containing about twenty-one acres were shown to be subdivided into fourteen plots; it also showed a new street now known as Irving avenue, and to produce this street two of the Grove road plots are shown to have been reduced in area. And the original plot L is shown as two plots each marked L and each containing over two and fifty hundredths acres. ,Some time between September, 1868, and December, 1872, Charlton avenue was laid out through plots T and U, and it is not shown on either of the maps mentioned.

"On December 31st, 1872, Vose conveyed to one Freeland a lot on the easterly side of Charlton avenue one hundred feet south of Raymond avenue, having a frontage of one hundred feet on Charlton avenue and a depth of two hundred feet; this conveyance contained the same recitals and covenants as the deed to DeGomme.

"By an agreement dated May 5th, 1873, between Vose and DeGomme, they undertook to modify the restrictions on the DeGomme lot to permit the erection of three houses thereon, and in the map of 1873 the DeGomme plot is shown as three lots.

"In November, 1873, a map showing part of the Vose tract and lands of other parties was filed, and this shows that the westerly part of lot L and plots M, T, U, E and D, as shown on the maps of 1867 and 1869, have been divided into forty-seven smaller lots. It also appears that, with the exception of the plots owned by Marston and his wife. the whole of plots V and U, and the westerly half of L, as shown on the map of 1869, and in fact the unsold portions of the Vose holdings, were lost to him by foreclosure in 1877.

"Marston derives title by mesne conveyance from Freeland, his wife owns the next plot north, one hundred by two

hundred feet, at the corner of Charlton and Raymond avenues. Both plots are improved as one and used as a residence by the Marstons. The house stands on the wife's plot, and the husband's plot is used as part of the lawn and gardens and the garage stands on it.

"The defendant Munther acquired title to the DeGomme lots by mesne conveyances from DeGomme, and May, 1922, he conveyed the southerly one hundred feet front on Charlton avenue to Lentz, and in September, 1922, he conveyed the balance of the plot to Lenart. The latter proposes to erect two houses on his lot and Lentz proposes to erect one house on his part of the plot, but if complainant prevails only one house can be built on this entire plot, and Lentz claims the prior right to build his house on his one-third of the plot because of the priority of title, and this contention, if sustained, will leave Lenart in the ownership of the remaining two-thirds of the plot and unable to erect any building or structure of any kind thereon.

"It also appears that by the foreclosure proceeding of Vose's unused holdings, and by the expiration of the restrictions on adjoining plots or on plots in the immediate vicinity of Charlton, Raymond and Ralston avenues and Grove road, that complainants' and defendants' properties are to a great extent isolated in an unrestricted neighborhood.

"It further appears that Marston acquiesced in the erection of two houses several years ago on what is known as the Fort property, directly across the street from the lot owned by him or his wife, although this property was restricted to one house, and it also appears that complainant further acquiesced in the violation of the restrictions on the Turrell lot, about three hundred feet from his property; for he was made a party defendant in an action in this court, brought by Turrell against Donwitzer, to have this restriction declared void, and with knowledge of the purposes of this litigation complainant permitted a decree by default to be taken against him, and the restriction was declared void as to the Turrell lot.

"It is stated that the houses which the defendants Lentz and Lenart intend to build are to cost $25,000 each, and that they are to be of the character suited to the neighborhood, as to expense and style.

"From these facts it is apparent that whatever plan or scheme Vose had in mind in 1866 for the development of his property into 'Gentlemen's Country Residences,' while it may have been a general, it was not a uniform scheme, and what-. ever it was, it was abandoned almost from its inception, and his plans and plotting of the property were radically changed from time to time, such change being indicated by reduction in the size of the plots, by changes in the number of houses that could be built thereon, by the opening of streets and by the subdivision of plots, .&c.

"During the fifty-five years that have elapsed since these restrictions were imposed great changes have taken place in the character of the neighborhood with a pronounced increase in its population, as well as a great increase in the demand for housing accommodations, due in part to the improvement in the transportation facilities now available for reaching this property.

"Complainant and others interested have recognized these changes, and because of them or for other reasons satisfactory to him and them, have acquiesced in the violation of this restriction.

"In *Fort* v. *Field,* Vice-Chancellor Fielder had occasion to consider these restrictions and the changes in the circumstances I have indicated, and he reached the conclusion, in which I fully concur, that there had been such a pronounced change in the character of the neighborhood, and such a general acquiescence by those interested in the violation of this restriction, that it amounted to an abandonment and estoppel.

"My conclusion is that whatever scheme of development Vose originally had was abandoned, and that complainant by his continued acquiescence in repeated violations of this restriction is now estopped from invoking its protection in this action.

"My conclusion in this matter is strengthened by the fact that to grant the restraint complainant seeks would be a great hardship upon one or both defendants, and would probably result in leaving Lenart in the ownership of part of a lot which he could never improve nor derive any benefit from. A denial of the restraint will not produce any material injury or inconvenience to complainant or his property, particularly in view of the character of the dwellings Lentz and Lenart intend to build on their respective properties, and I will therefore advise that the bill be dismissed."

*Messrs. Wall, Haight, Carey & Hartpence,* for the appellant.

*Messrs. Osborne, Cornish & Scheck; Messrs. Hopkins & Herr,* for the respondents.

*Messrs. Hopkins & Herr,* for William C. Lentz.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Foster.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, HEPPENHEIMER, GARDNER, VAN BUSKIRK, CLARK—11.

*For reversal*—None.